[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13, 2007
THOMAS K. KAHN
CLERK

No. 06-15254
Non-Argument Calendar

_____

D. C. Docket No. 05-00063-CR-KOB-TMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENJAMIN ALLEN HOPPER,
a.k.a. Benjamin Allen Hooper,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 13, 2007)**

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Benjamin Allen Hopper appeals his 132-month sentence for: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846; (2) manufacture of 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B); and (3) attempted possession with intent to distribute 5 grams or more of methamphetamine, in violation of §§ 841(a)(1), (b)(1)(B), and 846. On appeal, Hopper argues that his sentence was unreasonable because: (1) there was an improper disparity between his sentence and those of his co-defendants; and (2) the district court did not properly consider, in fashioning his sentence, his role in the offense, his mental condition, his financial status as the sole provider for his minor child, and whether a lesser sentence would have been sufficient. He further asserts that the district court should have granted him a minor-role reduction, as his conduct only involved one "cook" of five grams of methamphetamine. We AFFIRM.

## I. BACKGROUND

According to the Presentence Investigation Report ("PSI"), in 2000, Hopper, along with various individuals, learned a new method to manufacture methamphetamine, using anhydrous ammonia, which yields a conservative estimate of 50 grams per "cook." In 2002, law enforcement officers discovered

that Hopper and four co-defendants were cooking methamphetamine in a home laboratory. Hopper provided the ammonia, and a tank containing ammonia was found in Hopper's car. Additionally, in 2004, a confidential informant arranged a deal with Hopper, in which Hopper agreed to provide him with ammonia in exchange for finished methamphetamine.

A grand jury indicted Hopper for: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1); (2) manufacturing 5 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), (Count 2); and (3) attempted possession with intent to distribute 5 grams or more of methamphetamine, in violation of §§ 841(a)(1), (b)(1)(B), and 846 (Count 3). Hopper was the only member of the conspiracy charged with the third count. Hopper's motion for a psychiatric evaluation was granted; however, Hopper subsequently waived a competency hearing and conceded competency, The district court accepted Hopper's guilty plea, although Hopper later filed a motion to withdraw his guilty plea.

The PSI assigned Hopper a base offense level of 34, pursuant to U.S.S.G. § 2D1.1(c)(3), and added 3 levels pursuant to § 2D1.1(b)(8)(B), leaving him, after a 3-level reduction for acceptance of responsibility, with an offense level of 34.

With a criminal history category of II, his guideline range was 168 to 210 months of imprisonment.

At the sentencing hearing, Hopper retracted his motion to withdraw his guilty plea and his objection to the amount of methamphetamine for which he was held responsible. Hopper, in mitigation, argued that he actually was involved only in one instance with the co-defendants, and he was the sole care-giver of his eight year-old son. The government then moved for a downward departure based on Hopper's substantial assistance, as he had withdrawn his motion and objection to the drug amount, and since had cooperated with them. The government recommended a sentence of 135 months of imprisonment, based on his truthfulness, willingness to testify, and revelations regarding the materials that he used to produce methamphetamine. The court granted the government's motion, lowering Hopper's offense level three levels to 31, his guideline range thus becoming 121 to 151 months of imprisonment.

The court, in granting the departure under U.S.S.G. § 5K1.1, took into consideration the facts that Hopper did not agree to cooperate until the day of trial and filed a motion to withdraw his plea, indicating a lack of complete and continuous cooperation. In sentencing Hopper to 132 months of imprisonment, the court considered: (1) the other sentences imposed on the co-defendants in the case;

(2) Hopper's participation in the conspiracy; (3) the fact that the third count was filed solely against Hopper; and (4) the factors set forth in 18 U.S.C. § 3553(a). The court acknowledged the advisory nature of the guidelines. The court specifically noted that the sentence was sufficient, but not greater than necessary, to comply with the purpose of sentencing, and that it had considered: (1) Hopper's nature and circumstances; (2) the need for the sentence to reflect the seriousness of the crime; and (3) the need to promote respect for the law, give just punishment, and avoid unwanted sentencing disparities. The court ordered that, based on his psychiatric evaluation, Hopper was required participate in mental health treatment, and it stated that it would try to place Hopper in a facility close to his son.

## II. DISCUSSION

On appeal, Hopper argues that his sentence was unreasonable because of the improper disparity between his sentence and those of his co-defendants. He asserts that the district court should have granted him a minor-role reduction, as his conduct only involved one cook of five grams of methamphetamine. He further contends that the district court, in fashioning his sentence, did not properly consider his role in the offense, his mental condition, the fact that he was the sole provider for his minor child, and whether a lesser sentence would have been sufficient. Finally, Hopper asserts that the court did not consider that: his waiver

5

of the competency hearing was unknowing; he failed to raise the issue of diminished capacity; and his counsel was unaware of his medical condition at the time.

Typically, "[w]e review the sentence imposed by the district court for reasonableness." United States v. Talley, 431 F.3d 784, 785 (11th Cir. 2005) (per curiam) (citing United States v. Booker, 543 U.S. 220, 260, 125 S. Ct. 738, 765 (2005)). The government, however, argues that here, where the defendant did not object to the sentence as unreasonable at the district court level, our review should be for plain error.[1] We need not address this contention, however, because Hopper's arguments fail even under a reasonableness standard.

Congress has directed sentencing courts to consider the following factors in imposing sentences under the advisory guidelines scheme:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (6) the need to avoid unwarranted sentence disparities among

---

[1] Under plain error review, the error must be plain, affect substantial rights, and seriously implicate the fairness, integrity, or public reputation of judicial proceedings. See United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001) (per curiam) (citation omitted).

defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A district court need not explicitly consider every single § 3553(a) factor in order for the sentence to be reasonable. See United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). "[A]n acknowledgment by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient." Talley, 431 F.3d at 786. Additionally, a sentence within the guideline range is expected to be reasonable. Id. at 788. Moreover, "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both that record and the factors in section 3553(a)." Id.

Upon review of the record and consideration of the parties' briefs, we discern no reversible error. Because Hopper did not allege any facts to the district court that would show that he was entitled to a minor role-reduction by a preponderance of the evidence, the district court did not err in failing to grant him a minor-role reduction. Also, the district court adequately considered the sentences of the co-defendants and had a rational basis for Hopper's longer sentence. It noted that Hopper had been separately charged with a third count, for which the others had not been charged. Therefore, there was a reason for the sentencing

7

disparity, and, thus it was not "unwarranted." See 18 U.S.C. § 3553(a)(6).

Additionally, the district court considered Hopper's personal history and characteristics, as it noted both his psychiatric evaluation and his need to see his son. 18 U.S.C. § 3553(a). Therefore, to the extent that the district court was aware of his mental problems, and it stated that it was considering Hopper's personal history and characteristics, it was in compliance with Booker. It should be noted, additionally, that Hopper did not argue that his mental illness was a mitigating factor to the district court.

Finally, the district court specifically addressed various § 3553(a) factors, including: (1) his history and circumstances; (2) the need for the sentence to reflect the seriousness of the crime; and (3) the need to promote respect for the law, give just punishment and to avoid unwarranted sentencing disparities, which is sufficient under the caselaw. See Talley, 431 F.3d at 788. The other factors, such as his waived competency and his counsel's alleged unawareness of his mental issues, are not factors to be considered under the reasonableness analysis, see 18 U.S.C. § 3553(a), nor were they argued below, and accordingly, the court did not err in failing to consider them. See Hansen, 262 F.3d at 1248. Therefore, Hopper has not met his burden of demonstrating that his sentence was unreasonable.

### III. CONCLUSION

Because the district court adequately considered the sentences of the co-defendants and had a sound rationale for Hopper's longer sentence, there was no unwarranted sentencing disparity. Additionally, the court also considered the 18 U.S.C. § 3553(a) factors, including his history and characteristics, such that Hopper did not carry his burden to demonstrate that his sentence was unreasonable. Accordingly, we **AFFIRM**.